```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
AIR ATLANTA AERO ENGINEERING     :
LIMITED,                         :
                                 :      08 Civ. 8852(VM)
                      Plaintiff, :
                                 :      DECISION AND ORDER
      - against -                :
                                 :
SP AIRCRAFT OWNER I, LLC et al., :
                                 :
                     Defendants. :
---------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Air Atlanta Aero Engineering Limited ("AAAE") brought this action against defendants SP Aircraft Owner I, LLC ("SPI"), SP Aircraft Owner II, LLC ("SPII"), SP Aircraft Owner III, LLC ("SPIII"), and Ambac Assurance Corporation ("Ambac") (collectively, "Defendants"), asserting claims of breach of contract, account stated, unjust enrichment, quantum meruit, and promissory estoppel in connection with services AAAE rendered to non-party Air Horizons. Defendants now move to dismiss AAAE's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons discussed below, Defendants' motion to dismiss is GRANTED in its entirety, and the Court grants AAAE leave to file an amended complaint.

# I. BACKGROUND[1]

## A. PARTIES

AAAE is an Irish corporation that, among other things, provides aircraft technical support and maintenance services for leased aircraft. SPI, SPII, and SPIII (the "Lessors") are Delaware limited liability companies, and are wholly owned subsidiaries of Ambac, a Wisconsin corporation. At all times relevant to this action, each Lessor's principal, if not sole, asset was one Boeing 757 aircraft. Defendants have their principal places of business in New York.

## B. FACTUAL ALLEGATIONS

In or about April 2005, Air Horizons, a French charter airline, entered into three largely identical written agreements (the "Leases") to lease three Boeing 757 aircraft -- one from each Lessor.[2] The Leases provided, among other things, that Air Horizon was to immediately arrange for

---

[1] The facts below are taken from the Complaint, dated October 15, 2008 ("Complaint"), and the documents attached to it or incorporated by reference. See Global Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 156-57 (2d Cir. 2006). The Court accepts these alleged facts as true for the purpose of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008). Except where specifically referenced, no further citation to these sources will be made.

[2] Because the Leases are identical in all relevant aspects, the Court will quote from the Lease between SPI and Air Horizons as representative of the Leases, where applicable. (See Declaration of Paul S. Hessler, dated December 4, 2008 ("Hessler Decl."), Ex. 2 (Lease Agreement dated April 29, 2005 between SP Aircraft Owner I, LLC and Air Horizons ("SPI-AH Lease")).)

"Transition Maintenance,"[3] performed by an "Agreed Maintenance Performer,"[4] to be conducted on each aircraft before it could be put into service.    Each Lease required the Lessor's approval of the Agreed Maintenance Performer selected by Air Horizons, and, according to the Complaint, the Lessors agreed under the terms of the Leases to pay the Agreed Maintenance Performer for the cost of the Transition Maintenance up to a $1 million cap per Lease.

In or about April 2005, Air Horizons entered into a contract (the "Maintenance Agreement") with AAAE, under which AAAE, as the Agreed Maintenance Performer, was to provide the Transition Maintenance services required under the Leases.  In May 2005, the aircraft were delivered to AAAE, and AAAE began performing the Transition Maintenance under the supervision of Aviation Capital Group ("ACG"), a technical agent selected by Ambac to oversee the Transition Maintenance and assure that the work was performed correctly and billed properly.  At the

---

[3] "Transition Maintenance" is defined as "the maintenance work and modifications ... described in Schedule 2," (SPI-AH Lease § 1.1 at 16), which in turn specifies "(1) Airframe '3C' check, with all observed defects to be rectified in accordance with the Aircraft Maintenance Manual; (2) Such other maintenance work as may be required to place the Aircraft in a condition permitting operation of the Aircraft in commercial revenue service ...; and (3) Modification to interior configuration of the Aircraft to permit economy class seating (and associated parts) for 216 passengers" (id. Schedule 2 at 98).

[4] "Agreed Maintenance Performer" is defined as "any reputable Manufacturer, airline or maintenance organization that is approved by Lessor, such approval not to be unreasonably withheld" and is otherwise experienced, certified, and not objected to by the Lessor under § 7.5 of the Lease. (SPI-AH Lease § 1.1 at 2.)

same time, Ambac made an initial payment directly to AAAE for the Transition Maintenance in the amount of €381,316.

By July 2005, the Transition Maintenance on the three aircraft was complete.  After reviewing AAAE's work and billing statements, ACG informed AAAE that it would advise Ambac to pay the balance due to AAAE, an amount exceeding $1,200,000.[5]  In reliance on ACG's assurances as Ambac's agent, AAAE released the aircraft to Air Horizons.  Subsequent to AAAE's release of the aircraft, there were "communications" among Ambac, AAAE, and Air Horizons regarding payment for AAAE's services.  (Complaint ¶ 15.)  Ambac "confirmed its intention to pay AAAE" the remaining balance due for the Transition Maintenance. (Id.)  AAAE, however, was never paid.

In late 2005, AAAE learned that Air Horizons faced financial difficulties and had been placed into administration -- similar to bankruptcy -- by a French commercial court. AAAE placed liens on the three aircraft to assure payment under the Maintenance Agreement, but the French court lifted the liens when Defendants deposited with the court funds

---

[5] While the parties to the Maintenance Agreement were AAAE and Air Horizons, AAAE nonetheless alleges that Ambac made the initial payment to AAAE and that Ambac, through ACG, assured AAAE of its intention to pay the balance due.  The Complaint does not provide any explanation for why prior payments and assurances of future payments came from Ambac instead of Air Horizons, despite a provision of the Maintenance Agreement that clearly holds Air Horizons responsible for payment.  (See Hessler Decl., Ex. 1 (General Terms Maintenance Agreement ("Maintenance Agreement")) § 5.1 ("For the Services and other maintenance services, ... [Air Horizons] shall pay AAAE in accordance with the terms of the proposal....").)  See also infra n.8 (discussing significance of allegation of initial payment).

sufficient to pay AAAE.  Defendants took possession of the
three aircraft, and in or about February 2006 sold them to
U.S. Airways.  AAAE alleges that the sales proceeds derived by
Defendants included the value added by AAAE's Transition
Maintenance for which it was not compensated.  AAAE has since
attempted to obtain payment from Defendants through the French
court   administrative   proceeding,   but   Defendants   have
successfully  resisted  AAAE's  efforts,  claiming  that  that
tribunal lacks jurisdiction.

AAAE  now  argues  in  this  proceeding  that  because  the
Leases  provide  for  the  Agreed  Maintenance  Performer  to  be
compensated by the Lessors, because the Lessors approved AAAE
as the Agreed Maintenance Performer, and because the Lessors'
alleged  alter  ego  directly  paid  AAAE  in  part  for  AAAE's
services,  AAAE  was  intended  to  be  and  was  in  fact  a  third-
party beneficiary under the Leases.  As a result, AAAE seeks
recovery  for  damages  from  the  Lessors'  failure  to  pay  for
AAAE's services rendered to Air Horizons.  AAAE also brings
claims for account stated, unjust enrichment, quantum meruit,
and promissory estoppel premised on the facts described above.

AAAE  further  argues  that  Ambac  is  the  alter  ego  of  the
Lessors.  Specifically, AAAE alleges that: (1) Ambac approved
the selection of AAAE as the Agreed Maintenance Performer; (2)
Ambac  selected  ACG  as  its  technical  agent  to  oversee  the

Transition Maintenance work and billing performed by AAAE; (3) Ambac made the initial €381,316 payment to AAAE when the aircraft were first delivered; (4) in all communications with AAAE, ACG indicated that it represented and was communicating with Ambac, not the Lessors; (5) Ambac, through its agent, advised AAAE that the work had been completed satisfactorily; (6) Ambac communicated with AAAE and/or Air Horizons regarding payment for the Transition Maintenance, during which Ambac confirmed its intention to pay AAAE the balance due; and (7) Ambac received the proceeds of the sales of the three aircraft to U.S. Airways. Further, AAAE alleges that Ambac has ignored corporate formalities as they apply to the Lessors, that the Lessors' officers were also officers of Ambac, and that Ambac caused the sale of the Lessors' sole assets -- the three aircraft -- to U.S. Airways and Ambac received the proceeds. AAAE thus concludes that Ambac is the alter ego of the Lessors and asks the Court to pierce the corporate veil, holding Ambac liable for AAAE's claims brought against the Lessors.

## II. <u>DISCUSSION</u>

A.   <u>LEGAL STANDARD</u>

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. <u>See</u> <u>Ashcroft v. Iqbal</u>,

556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To state a
facially plausible claim, a plaintiff must plead "factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Id.
However, a court should not dismiss a complaint for failure to
state a claim if the factual allegations sufficiently "raise
a right to relief above the speculative level."  Twombly, 550
U.S. at 555.  The task of a court in ruling on a motion to
dismiss is to "assess the legal feasibility of the complaint,
not to assay the weight of the evidence which might be offered
in support thereof."   In re Initial Publ. Offering Secs.
Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal
quotation marks and citation omitted).

     For the purposes of deciding a motion to dismiss, the
Court accepts the factual allegations in a complaint as true,
and draws all reasonable inferences in the plaintiff's favor.
See Iqbal, 129 S. Ct. at 1950 ("When there are well-pleaded
factual allegations, a court should assume their veracity and
then determine whether they plausibly give rise to an
entitlement to relief."); Chambers v. Time Warner, Inc., 282
F.3d 147, 152 (2d Cir. 2002) (all reasonable inferences shall
be drawn in plaintiff's favor).  However, allegations that are

no more than legal conclusions "are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.

B.   BREACH OF CONTRACT

Defendants contend that AAAE's breach of contract claim should be dismissed because AAAE is not a party to the Leases -- the contracts that were allegedly breached -- nor is AAAE a third-party beneficiary to the Leases because the Leases were not intended for AAAE's benefit, nor do they clearly evidence an intent to permit enforcement by AAAE. As support, Defendants argue that the Leases required the Lessors to render payment directly to AAAE only when certain conditions were met, and the Complaint does not allege that those circumstances occurred; thus, AAAE was not an intended third-party beneficiary of the Leases. AAAE responds that it has sufficiently pleaded that, based on the language in the Leases and the surrounding circumstances, the Transition Maintenance provisions of the Leases were intended to benefit AAAE.

"It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed." County of Suffolk v. Long Island Lighting Co., 728 F.2d 52, 63 (2d Cir. 1984) (citing Lawrence

v. Fox, 20 N.Y. 268 (1859)).[6]  "A non-party is an intended third-party beneficiary if (inter alia) 'recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties.'" Consolidated Edison, Inc. v. Northeast Utils., 426 F.3d 524, 527 (2d Cir. 2005) (quoting Restatement (Second) of Contracts § 302 (1981)).  Under New York law,

> A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.

Madeira v. Affordable Housing Found., Inc., 469 F.3d 219, 251-52 (2d Cir. 2006) (quotation marks and citations omitted); see also State of Cal. Pub. Employees' Ret. Sys. v. Shearman & Sterling, 741 N.E.2d 101, 104 (N.Y. 2000).

"In determining whether there is an intended third party beneficiary, courts should look first at the contractual language itself ... and where appropriate 'the surrounding circumstances.'" Muhlrad v. Mitchell, No. 96 Civ. 3568, 1997 WL 182614, at *6 (S.D.N.Y. Apr. 14, 1997) (quoting Trans-

---

[6] In diversity cases, the Court looks to New York choice-of-law rules to determine what law to apply to the parties' substantive claims.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  As the parties appear to agree that New York law governs AAAE's claims, the Court will apply New York law for the purposes of this motion.  See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 239 n.4 (2d Cir. 1999) ("The parties agree that New York law governs this action, and we therefore apply it.").

-9-

Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991)). "Among the circumstances to be considered is whether manifestation of the intention of the promisor and promisee is sufficient, in a contractual setting, to make reliance by the beneficiary both reasonable and probable." Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., 485 N.E.2d 208, 212 (N.Y. 1985) (quotation marks omitted).

"While the third-party beneficiary does not have to establish that it is explicitly mentioned in the contract, New York law requires that the parties' intent to benefit a third-party be shown on the face of the contract." Synovus Bank of Tampa Bay v. Valley Nat'l Bank, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007); see also LaSalle Nat'l Bank v. Ernst & Young LLP, 729 N.Y.S.2d 671, 676 (App. Div. 1st Dep't 2001) ("[T]he parties' intent to benefit the third party must be apparent from the face of the contract.  Absent clear contractual language evincing such intent, New York courts have demonstrated a reluctance to construe such an intent." (citations omitted)).  Indeed, "surrounding circumstances" cannot give rise to third-party beneficiary status "absent some indication in the actual agreement of the parties' intent." Olin Corp. v. E.I. DuPont Nemours & Co., No. 05-CV-100S), 2007 WL 610625, at *4 (W.D.N.Y. Feb. 23, 2007).  "To

create a third party right to enforce a contract, 'the language of the contract' must 'clearly evidence[] an intent to permit enforcement by the third party[.]'" <u>Consolidated Edison</u>, 426 F.3d at 528 (emphasis in original) (<u>quoting</u> <u>Fourth Ocean Putnam</u>, 485 N.E.2d at 212).

Applying these principles to the case at hand, the Court finds that the Complaint does not sufficiently allege facts establishing that AAAE is an intended third-party beneficiary of the Leases. AAAE concedes that it is not explicitly named in the Leases. While such a reference is not required for AAAE to be considered a third-party beneficiary, AAAE nonetheless must establish that the parties' intent to benefit AAAE can be found on the face of the Leases. <u>See Synovus Bank of Tampa Bay</u>, 487 F. Supp. 2d at 368. Although the Leases unquestionably anticipate Air Horizon's retention of an Approved Maintenance Provider, the language of the Leases does not "clearly evidence[] an intent to permit enforcement by" AAAE. <u>Fourth Ocean Putnam</u>, 485 N.E.2d at 212.

AAAE argues that the language of the Leases evidences the signatories' intent to benefit AAAE because: (1) "the Leases themselves envision a direct relationship between the Defendants and AAAE as the 'Approved Maintenance Provider'"; and (2) "the Leases anticipated direct payment to the Approved Maintenance Provider by Defendants." (Plaintiff's Memorandum

-11-

of Law in Opposition to Defendants' Motion to Dismiss, dated January 12, 2009 ("AAAE Opp."), at 7.)  For support, AAAE relies upon a section of the Leases titled "Lessor's Maintenance Contribution."  (SPI-AH Lease § 7.2.)  After detailing certain reimbursable expenses, § 7.2 contains the following relevant subsections:

    (f)  <u>Additional Provisions</u>:

        (i)  Notwithstanding anything to the contrary contained in this Section 7.2, any such maintenance and the extent and nature of such maintenance to be performed shall be conducted at an Agreed Maintenance Performer.  Lessor shall be entitled to have representatives present during the performance of such maintenance to oversee and approve all aspects of such performance, including the workscope thereof.  Lessor shall be notified by Lessee prior to the commencement of any maintenance work described in this Section 7.2, including as to the Agreed Maintenance Performer and for Lessor's reasonable approval of the workscope.

        (ii)  Lessee acknowledges that Lessee is required to pay the full cost of and to perform (or cause to be performed) any check, shop visit, overhaul or other maintenance required by the Agreed Maintenance Program, whether or not Lessor is required to make any payments pursuant to this Section 7.2, and any costs incurred by Lessee in performing any such check, shop visit, overhaul or other maintenance required by the Agreed Maintenance Program shall be for Lessee's account solely, except as otherwise provided in Section 7.2(g) below.

    (g)  <u>Additional Reimbursement by Lessor</u>:

        (i)  In addition to Lessor's reimbursement obligations for each category of maintenance set forth ... above, Lessor shall also

-12-

reimburse Lessee's Actual Cost in completing the first Scheduled Maintenance Event .... Upon receipt of ... satisfactory written evidence, and provided there then exists no Default or Event of Default, Lessor shall pay to Lessee, or to the Agreed Maintenance Performer performing such maintenance if so directed by Lessee, the amount obtained from the following formula ....

(h)   <u>Payments by Lessor</u>:

(i)   Lessee will not enter into any agreements with an Agreed Maintenance Performer that will be performing any maintenance work ... in which Lessee will be required to make any progress or deposit payments to such provider without the prior written consent of Lessor. In addition, at Lessor's request, Lessor shall be a party, along with Lessee and such Agreement Maintenance Provider, to any such contracts, and if such contracts shall relate only to the Aircraft, the Engine or Parts. If such prior written consent has been obtained, then at Lessee's request Lessor shall pay such progress or deposit payments when due such Agreed Maintenance Performer, up to an amount not to exceed 50% of the amount that Lessor will be required to pay related to such maintenance work ....

(ii)  As soon as practicable ... after receipt of a claim for reimbursement of Reimbursable Expenses, Lessor shall (i) notify Lessee in writing of any portion of such claim to which it reasonably objects or for which it reasonably requires additional supporting documentation, and (ii) pay all portions of such claim to which it does not reasonably object or need additional documentation.

(<u>Id.</u> § 7.2(f)-(h).)

AAAE first argues that these provisions establish a "direct relationship" between the Approved Maintenance Provider and the Lessors, evidencing their intention to

benefit AAAE.  (AAAE Opp. at 7.)  At the outset, the Court notes that AAAE's characterization of the relationship as "direct" is conclusory.  Further, the Leases do not establish a "direct relationship" between the Lessors and AAAE sufficient to establish the parties' intent to benefit AAAE. For example:

- Only "if so directed by" Air Horizons, the Lessors must make reimbursement payments to AAAE for certain services provided by AAAE.  (SPI-AH Lease § 7.2(g)(i).)

- The Leases prohibit Air Horizons from entering into a contract with AAAE that requires progress or deposit payments to AAAE without the Lessors' written consent.  However, at the Lessors' request, the Lessors shall be parties with Air Horizons and AAAE to these contracts.  In addition, if the Lessors provided this written consent, then, at Air Horizon's request, the Lessors must make certain payments to AAAE up to a particular amount.  (<u>Id.</u> § 7.2(h)(i).)

The Leases do not require a direct relationship between the Lessors and the Approved Maintenance Provider.  To the contrary, the Leases manifest great care to distance the Lessors from the Approved Maintenance Provider unless either

-14-

the Lessors or Air Horizons -- the signatories to the Leases -- actively make a specific request establishing such a relationship.  AAAE does not allege that (1) Air Horizons directed the Lessors to make reimbursement payments directly to AAAE pursuant to § 7.2(g)(i); (2) Air Horizons requested that the Lessors make payments directly to AAAE pursuant to § 7.2(h)(i); or (3) the Lessors requested that they be parties to the Maintenance Agreement.  The Leases, in other words, anticipate direct payment from the Lessors to AAAE only when certain conditions are met, and the Complaint does not allege that any of those conditions occurred.

When a contract "does not contain an express provision identifying plaintiff as an intended third-party beneficiary" or "otherwise reveal a specific intent to confer a benefit upon plaintiff or permit plaintiff to enforce the contract terms," a court should dismiss an alleged third-party beneficiary's claim for breach of that contract.  Conklin v. City of Saratoga Springs, 699 N.Y.S.2d 820, 821 (App. Div. 3d Dep't 1999).  The face of each Lease reveals no such specific intent to confer a benefit upon an Approved Maintenance Provider absent the specified conditions.  Because AAAE fails to allege such conditions occurred, the Court rejects AAAE's argument that the Leases envision a "direct relationship" between the Lessors and the Approved Maintenance Provider.

-15-

AAAE next argues that "the Leases anticipated direct payment to the Approved Maintenance Provider by Defendants." (AAAE Opp. at 7.)   "Where performance is to be rendered directly to a third party under the terms of an agreement, that party must be considered an intended beneficiary." Flickinger v. Harold C. Brown & Co., Inc., 947 F.2d 595, 600 (2d Cir. 1991) (quoting Cauble v. Mabon Nugent & Co., 594 F. Supp. 985, 991 (S.D.N.Y. 1984)).   However, the Leases do not "anticipate" direct payment, but rather permit the Lessors to make direct payments to AAAE if Air Horizons requests such payment pursuant to either § 7.2(g)(i) or § 7.2(h)(i) of the Leases.   AAAE does not allege that Air Horizons made any such requests; rather, the Leases painstakingly describe the circumstances in which such direct payment shall occur, and it is under those circumstances in which the Leases may "clearly evidence[] an intent to permit enforcement by" AAAE.   Fourth Ocean Putnam, 485 N.E.2d at 212.   The absence of such circumstances -- or, for Rule 12(b)(6) purposes, allegations that such circumstances occurred -- establishes the absence of a clearly evidenced intent of AAAE's right to enforce as an intended beneficiary.

The Complaint contains only one allegation that demonstrates direct interaction between the Lessors and AAAE pursuant to the Leases.   The Leases provide that the

-16-

"Lessor[s] shall be entitled to have representatives present during the performance of such maintenance to oversee and approve all aspects of such performance, including the workscope thereof."   (SPI-AH Lease § 7.2(f)(i).)   The Complaint alleges that ACG, a representative selected by Ambac, oversaw the Transition Maintenance conducted by AAAE. Such oversight, however, does not clearly evidence the parties' intent to provide AAAE with a right to enforce the contracts.   AAAE fails to describe how the Lessors' oversight of AAAE's services could or did confer any benefit upon AAAE, see Conklin, 699 N.Y.S.2d at 821, particularly given the extensive language contained in the Leases addressing the precise circumstances under which the parties envisioned the Lessors' direct performance to AAAE.[7]

---

[7] The Leases' anticipation that Air Horizons would retain an Approved Maintenance Provider does not establish a right of enforcement to AAAE. The Second Circuit recently stated that "[c]ontract language referring to third parties as necessary to assist the parties in their performance does not ... show an intent to render performance for the third party's benefit."   Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 126 (2d Cir. 2005).   In Subaru, the Circuit Court approvingly quoted a New York appellate court decision, stating:

> "This Court and others have consistently held in instances where the contract in issue makes clear that a third party will be retained to assist in the performance by the promisee that such third parties are not intended beneficiaries of the main contract."   Artwear, Inc. v. Hughes, 615 N.Y.S.2d 689, 693 (App. Div. 1st Dep't 1994).   The court cited the analogous rule that a subcontractor on a construction project is not a third-party beneficiary to the contract between the owner and the general contractor.   Id. at 694.

Id. at 125-26.   Similarly, the parties' anticipation of the retention of an Approved Maintenance Provider, and the Lessors' ability to oversee the provision of Transition Maintenance -- a natural extension of such retention -- does not give rise to third-party beneficiary status.

AAAE next argues that the "surrounding circumstances" evidence the parties' intent to permit AAAE to enforce the Lessors' payment under the Leases.  Although New York courts are permitted to look to surrounding circumstances "where appropriate" to determine whether a plaintiff is an intended third-party beneficiary, Muhlrad, 1997 WL 182614, at *6, such circumstances cannot give rise to third-party beneficiary status "absent some indication in the actual agreement of the parties' intent." Olin, 2007 WL 610625, at *4.  New York law requires "that the agreement itself contain some expression of intent that a benefit accrue to a third party or, at the very least, that the intent to benefit a third party be unmistakenly obvious to the promisor." Id.  Here, the Leases on their faces do not contain any expression of intent that a benefit would accrue to AAAE, nor is it "unmistakenly obvious" that the Lessors should have expected such a result, particularly given (1) the explicit provisions in the Leases describing when the Lessors were required to provide payment directly to AAAE; and (2) the existence of a separate agreement between AAAE and Air Horizons.

"The best evidence of the contracting parties' intent as to whether a third party was an intended beneficiary to a contract, is the language of the agreement itself." Polesuk v. CBR Sys., Inc., No. 05 Civ. 8324, 2006 WL 2796789, at *15

(S.D.N.Y. Sept. 29, 2006).  "Absent any indication of such an intention on the face of the agreement, 'the third party is merely an incidental beneficiary with no right to enforce the contract.'"  Olin, 2007 WL 610625, at *4 (quoting In re Gulf Oil/Cities Serv. Tender Offer Litig., 725 F. Supp. 712, 733 (S.D.N.Y. 1989)).  While it may be appropriate to look to the "surrounding circumstances" when a contract's literal terms are ambiguous or provide latitude, here the language of the Leases clearly demonstrates, even construing the relevant provisions in the light most favorable to AAAE, that the parties did not intend for AAAE to be a third-party beneficiary to the Leases.  At most, AAAE is an incidental beneficiary.

AAAE argues that Ambac's payment of an initial deposit before AAAE began its work on the aircraft constitutes "surrounding circumstances" of the parties' intent to confer a benefit upon AAAE.  (See AAAE Opp. at 7.)  However, the Complaint fails to allege that Air Horizons requested direct payment from Ambac to AAAE, as required on the face of each Lease.  While AAAE argues in its opposition brief that this payment was made "no doubt with [Air Horizon's] consent," (id.), it is in the Complaint, not a brief, in which AAAE must make its allegations.  See Friedl v. City of New York, 210 F.3d 79, 83-84 (2d Cir. 2000) ("[A] district court errs when

it ... relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." (citation omitted)).  Although Ambac's initial payment might provide factual support that Air Horizons directed Ambac to pay AAAE, the underlying (but required) allegation that Air Horizons directed Ambac to make that payment is absent from the Complaint.

For the above reasons, AAAE does not have an enforceable right to bring a breach of contract claim against the Lessors as to the Leases, and the claim is dismissed.[8]

C.   <u>UNJUST ENRICHMENT, QUANTUM MERUIT, AND PROMISSORY ESTOPPEL</u>

Defendants next argue that AAAE's claims for unjust enrichment, quantum meruit, and promissory estoppel should be dismissed because the Leases and Maintenance Agreement govern the subject matter of this dispute, and under New York law, the existence of a written contract precludes quasi-contractual recovery for events arising out of the same subject matter.   (<u>See</u> Memorandum of Law in Support of Defendants' Motion to Dismiss, dated December 5, 2008, at 10.) AAAE responds that: (1) AAAE may seek quasi-contractual relief in the alternative to its breach of contract claim; and (2)

---

[8] Because the Court has determined that AAAE is not a third-party beneficiary, the Court need not, and does not, address Defendants' argument that AAAE has not sufficiently pleaded that the Leases were in fact breached.

with respect to the Maintenance Agreement, New York law is unsettled as to whether a valid and enforceable contract covering the subject matter of the dispute bars quasi-contractual claims against non-parties.  (See AAAE Opp. at 14.)

The New York Court of Appeals has spoken directly to the issue of when quasi-contractual claims are precluded:

> The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.  A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment.

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987) (citations omitted); see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit ... if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim.").  Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a dispute as to the agreement's validity or enforceability.  See, e.g., Perfect Dental, PLLC v. Allstate Ins. Co., Nos. 04 CV 0586, 04 CV 0588, 2006 WL 2552171, at *1 (E.D.N.Y. Aug. 31, 2006) ("[W]here there is a bona fide dispute regarding the existence of a contract,

plaintiffs may plead a breach of contract claim and an unjust enrichment in the alternative."); Gianascio v. Giordano, No. 99 Civ. 1796, 2003 WL 22999454, at *5 (S.D.N.Y. Dec. 19, 2003) (same); Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260, 1272 (S.D.N.Y. 1991) (permitting plaintiff to seek quasi-contract claim in the alternative because it had not yet been determined whether the contract at issue was valid).

In this case, the Leases and Maintenance Agreement constitute express agreements, and AAAE does not contend that they are not valid and enforceable.  While plaintiffs are generally free to plead alternative and contradictory theories of recovery pursuant to Federal Rules of Civil Procedure 8(d)(2) and (3), AAAE's failure to allege that the contracts at issue are invalid or unenforceable precludes it, under Clark-Fitzpatrick, from seeking quasi-contractual recovery for events arising out of the same subject matter.  Cf. Adams v. Labaton, Sucharow & Rudoff LLP, No. 07 Civ. 7017, 2009 WL 928143, at *7 (S.D.N.Y. Mar. 20, 2009) ("Plaintiff's remaining claims of promissory estoppel, unjust enrichment, and quantum meruit cannot be maintained alongside a properly asserted breach of contract claim as a matter of law.  'The existence of a valid contract will generally preclude quasi-contract claims.'  As such, these claims may only proceed should the Court find that no valid contract exists." (quoting Stillman

-22-

v. Townsend, No. 05 Civ. 6612, 2006 WL 2067035, at *6
(S.D.N.Y. July 26, 2006) and collecting cases)).

This principle applies equally to the Maintenance
Agreement, even though Defendants are not parties to that
agreement.   AAAE points out that a court in this District
previously held that the "existence of a written contract
governing the same subject matter does not preclude [quasi-
contract] recovery from non-parties" to the contract.   Seiden
Assocs., Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 40
(S.D.N.Y. 1991).   That position, rendered eighteen years ago,
has decidedly fallen out of favor in New York courts.   See Law
Debenture v. Maverick Tube Corp., No. 06 Civ. 14320, 2008 WL
4615896, at *13 (S.D.N.Y. Oct. 15, 2008) ("[S]ubsequent to the
decision in Seiden, many courts in New York state and in this
District have found that the existence of a valid and binding
contract governing the subject matter at issue in a particular
case does act to preclude a claim for unjust enrichment even
against a third party non-signatory to the agreement....   The
Court finds the trend of recent New York state and federal
decisions to be persuasive and concludes that a claim for
unjust enrichment, even against a third party, cannot proceed
when there is an express agreement between two parties
governing the subject matter of the dispute." (collecting
cases)); American Med. Ass'n v. United Healthcare Corp., No.

-23-

00 Civ. 2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007) ("Despite the Seiden court's reasoning, subsequent decisions both in New York state courts and in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract." (collecting cases)). The Court finds this trend to be persuasive and similarly holds that a quasi-contractual claim against a third party must be dismissed when an undisputedly valid and enforceable written contract governs the same subject matter.

To escape this outcome, AAAE alleges that Defendants made "separate and independent assurances, representations, undertakings, promises, or agreements to pay for the work in question," thus removing AAAE's claims from the subject matter addressed in the Leases and Maintenance Agreement. (AAAE Opp. at 15.) The Court disagrees. AAAE seeks compensation for the precise services covered by the Maintenance Agreement and anticipated by the Leases. Because the disputed payment stems from AAAE's performance of the same subject matter addressed in these written agreements, the Court finds that any quasi-contract claims arising from a lack of payment for those services rendered are unavailable for the reasons discussed above.

-24-

D.   <u>ACCOUNT STATED</u>

AAAE also alleges an account stated claim. Specifically, the Complaint states that "Ambac made a partial payment for the Transition Maintenance," but still owes in excess of $1,200,000. (Complaint ¶ 34.) According to AAAE, Ambac never disputed this amount, "which was verified by ACG," and has failed to pay. (<u>Id.</u> ¶¶ 35-36.)

"Under New York law, an 'account stated' refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due." <u>White Diamond Co., Ltd. v. Castco, Inc.</u>, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006). "An account stated assumes the existence of some indebtedness between the parties, or an express agreement to treat the statement as an account stated." <u>M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.</u>, 669 N.Y.S.2d 318, 319 (App. Div. 2d Dep't 1998). "In the absence of a claim establishing underlying liability, the account stated claim [is] not viable." <u>Unclaimed Property Recovery Serv., Inc. v. UBS PaineWebber Inc.</u>, 870 N.Y.S.2d 361, 362 (App. Div. 1st Dep't 2009).

AAAE cannot establish an account stated claim if Ambac is not a debtor. A New York court recently considered a plaintiff who "attempt[ed] to circumvent the lack of any contract between the parties" by asserting, among others, an

-25-

account stated claim.  Morgan Vertical Consultants, Inc. v. Arco Wentworth Mgmt., 836 N.Y.S.2d 501, 2007 WL 852549, at *2 (Sup. Ct. Queens Cty. 2007) (Table).  The court there held that "an account stated assumes the existence of some indebtedness between the parties.  It cannot be used to create liability where none otherwise exists."  Id.; see also Grinnell v. Ultimate Realty, LLC, 832 N.Y.S.2d 244, 245 (App. Div 2d Dep't 2007) ("A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract.").  Similarly, AAAE cannot use the mechanism of an account stated claim to circumvent the lack of a contract between the parties. Without an express agreement or some other form of indebtedness between Ambac and AAAE, a cause of action for an account stated is unavailable.  See Meadowbrook-Richman, Inc. v. Associated Fin. Corp., 325 F. Supp. 2d 341, 360 (S.D.N.Y. 2004) ("Under New York law, an account stated claim requires 'an agreement between the parties to an account based upon prior transactions between them ....'" (emphasis added) (quoting LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999))).

In this case, it is unclear whether "some indebtedness" exists between AAAE and Ambac, M. Paladino, 669 N.Y.S.2d at 319, or whether AAAE is attempting to circumvent the absence

-26-

of a contract.  First, AAAE has not alleged that Ambac is the debtor named on any billing statement allegedly approved by ACG.  Second, AAAE does not have a right to enforce the Leases as a third-party beneficiary, yet the account stated claim appears to allege that the agreement arises under the Leases. (See Complaint ¶ 33 (stating that the relevant services were those "called for under each lease agreement").)  Third, the Maintenance Agreement between AAAE and Air Horizons already addresses the payment that the account stated claim seeks, and such a claim "cannot be utilized simply as another means to attempt to collect under a disputed contract." Grinnell, 832 N.Y.S.2d at 245.  The Maintenance Agreement states that "AAAE shall use its best endeavours [sic] to present all invoices ... to [Air Horizons] within 14 (fourteen) days of the Services being completed.  AAAE shall charge [Air Horizons] for the performance of the Services in accordance with the following rates ...."  (Maintenance Agreement § 5.)  Given that the Maintenance Agreement calls for AAAE to present its invoices to and charge Air Horizons, not Ambac, and given that AAAE cannot seek payment pursuant to the Leases' terms, AAAE's claim must be dismissed unless it alleges the existence of some other form of indebtedness or enforceable promise to pay by Ambac.  At minimum, AAAE must clarify the precise nature of

Ambac's indebtedness to AAAE outside of the Leases and the Maintenance Agreement.

Assuming but not deciding that some form of indebtedness exists between the parties, the Court nonetheless finds that AAAE has not stated facts sufficient to permit the Court to infer that AAAE has a plausible account stated claim. As the Supreme Court recently stated in Iqbal:

> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown -- that the pleader is entitled to relief.

129 S. Ct. at 1950 (quotation marks, alterations, and citation omitted). The circumstances present in this case compel the Court to conclude that AAAE's allegations fall short of the Iqbal standard in several respects.

"For an account stated claim, the plaintiff must allege that (1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp., No. 06 Civ. 52, 2006 WL 2337186, at *12 (S.D.N.Y. Aug. 11, 2006); see also The Haskell Co. v. Radiant Energy Corp., No. 05-CV-4403, 2007 WL 2746903, at *12 (E.D.N.Y. Sept. 19, 2007).

-28-

As to the first element -- whether an account was presented -- the Complaint alleges that ACG, as Ambac's agent, "reviewed ... AAAE's statements for the work" and "informed AAAE that it would advise Ambac to pay the balance due to AAAE." (Complaint ¶ 13.) The determination of agency, however, "is a mixed question of law and fact. To meet [its] pleading burden, [AAAE] must allege facts that, if true, would support the legal conclusion that an agency relationship exists." In re Amaranth Natural Gas Commodities Litig., 587 F. Supp. 2d 513, 546 (S.D.N.Y. 2008). While the Leases state that the Lessors were entitled "to have representatives present during the performance of such maintenance to oversee and approve all aspects of such performance, including the workscope thereof," (SPI-AH § 7.2(f)(i)), AAAE does not direct the Court to any language in the Leases granting such representatives with the authority to accept and review statements or otherwise supervise billing and payments. Indeed, the scope of agency envisioned by § 7.2(f)(i) is limited to the oversight an approval of "performance" of maintenance and its workscope. Given this limitation, AAAE must allege additional facts to support its assertion that ACG's perceived or actual scope of alleged agency extended beyond the limited scope specified in the Leases. AAAE's conclusory statements that ACG was AAAE's agent to receive

-29-

statements, presented without alleging any facts supporting this conclusion, cannot suffice. The Court therefore finds that the Complaint does not sufficiently allege facts supporting the legal conclusion that ACG functioned as Ambac's approved agent for the purpose of receiving presented statements such that presentation of a statement to ACG was the equivalent of its presentation to Ambac.

As to the second element, the Court rejects AAAE's argument that Ambac accepted the account presented as correct when ACG told AAAE it would advise Ambac to pay the balance due to AAAE. To the contrary, this allegation makes clear that ACG was presenting the balance to Ambac as a recommendation, and did not accept it as correct on Ambac's behalf. While the Complaint alleges that "Ambac confirmed its intention to pay AAAE the balance due for the Transition Maintenance as provided in the lease agreements," (Complaint ¶ 15), such an allegation goes to the sufficiency of the third element -- that the debtor promised to pay the stated amount. This alleged assurance has no bearing on whether the account was accepted as correct; otherwise, the requirement that the debtor accept the account as correct would be meaningless, as

any agreement to pay the stated amount would automatically
constitute acceptance of the account as correct.[9]

To be sure, acceptance of a presented account as correct
need not be express; courts recognize implied acceptance in
various circumstances, including partial payment and failure
to object within a reasonable time. See, e.g., Kirk v. Heppt,
532 F. Supp. 2d 586, 594 (S.D.N.Y. 2008) ("Under New York law,
[partial] payments can also give rise to an account stated
claim."); Manhattan Motorcars, Inc. v. Automobili Lamborghini,
S.p.A., 244 F.R.D. 204, 216 (S.D.N.Y. 2007) ("Among the
circumstances to be considered in implying an agreement is
whether an objection has been made to the account within a
reasonable time."). The Court does not consider Ambac's
initial payment of €381,316 to constitute partial payment, as
such payment occurred in May 2005, prior to the presentation
of the account stated at issue in July 2005. Clearly, a party
cannot perform partial payment regarding an agreed upon
account prior to presentation and acceptance of the account.

However, a court may find an account stated to have been
impliedly accepted when the defendant does not object to the

---

[9] While assurances of payment accompanied with partial payment may
establish acceptance of a presented account, see, e.g., White Diamond, 436
F. Supp. 2d at 623, such assurances without partial payment after
presentation are not enough. For the reasons discussed below, the Court
finds that Ambac did not make partial payment on the disputed account
stated; therefore, AAAE's allegation that Ambac assured AAAE it intended
to pay the balance due, without more, is not enough to state a claim.

-31-

account within a reasonable time.  "An objection to an account stated that is first made only after litigation on the account stated has been commenced is, as a matter of law, not made within a reasonable time."  White Diamond, 436 F. Supp. 2d at 623.  AAAE alleges that "Defendants have never disputed the amount owed."  (Complaint ¶ 35.)  Because AAAE alleges that Ambac never objected to the account stated, the Court finds that, under the standards for a motion to dismiss under Rule 12(b)(6), AAAE has sufficiently alleged that Ambac accepted the account presented as correct.

As to the third element, the Court finds that the Complaint again fails to provide facts sufficient under Iqbal to support the allegation that Ambac promised to pay the amount stated.  AAAE alleges that Ambac never made payment on the $1,200,000 balance with which it was presented in July 2005, but the allegation that "there were communications among Ambac, AAAE, and [Air Horizons] concerning payment" does not sufficiently allege a promise to pay.  (Complaint ¶ 15.)  The one statement offered as to Ambac's promise to pay alleges that "[i]n these communications, Ambac confirmed its intention to pay AAAE the balance due for the Transition Maintenance as provided in the lease agreements."  (Id.)  Two issues arise in connection with this allegation.

First, as to whether Ambac confirmed its intention to pay AAAE "as provided in the lease agreements," the Court has already determined that AAAE does not have a right of enforcement pursuant to the Leases; therefore, there is not sufficient indebtedness between these parties to give rise to an account stated claim.

Second, even if such indebtedness did exist, AAAE's cryptic statement that "Ambac confirmed its intention to pay AAAE" is not a sufficient factual pleading under Iqbal. AAAE essentially makes a conclusory allegation as to Ambac's state of mind and its intentions. However, AAAE fails to specify the form of the alleged confirmation; who made the confirmation; how, where, or when the confirmation took place; or any other details about this confirmation. Cf. Iqbal, 129 S. Ct. at 1952 (dismissing claim where the allegations failed to "plausibly suggest [defendants'] discriminatory state of mind"). In short, in the context of this case, a blanket statement that a defendant "confirmed an intention to pay" without any factual details supporting that allegation does not state a plausible claim for relief. While such allegations may have provided sufficient notice pleading in the past, Twombly and Iqbal provide clear instructions that conclusory statements about a party's alleged intentions should be accompanied with supporting factual allegations

-33-

where circumstances so demand.  See Iqbal, 129 S. Ct. at 1952
(stating that plaintiff "would need to allege more by way of
factual content to 'nudg[e]' his claim ... 'across the line
from conceivable to plausible.'" (alteration in original)
(quoting Twombly, 550 U.S. at 570)).  This case presents such
circumstances.[10]

E.    ALTER EGO ALLEGATIONS

AAAE alleges that Ambac is the Lessors' alter ego.  AAAE
thus asks the Court to treat Ambac and SPI, SPII, and SPIII
"as one entity" for the purposes of this dispute, Wm.
Passalacqua Builders, Inc. v. Resnick Devs. S., Inc., 933 F.2d
131, 142-43 (2d Cir. 1991), and requests that the Court pierce
the corporate veil between Ambac and the Lessors.

"Under New York choice of law principles, 'the law of the
state of incorporation determines when the corporate form will
be disregarded.'"  Impulse Marketing Group, Inc. v. National
Small Business Alliance, Inc., No. 05 Civ. 7776, 2007 WL
1701813, at *7 (S.D.N.Y. June 12, 2007) (quoting Fletcher v.
Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).  This
principle may apply even when the contract at issue has a
choice of law provision, depending upon how that provision is

---

[10] While the Complaint uses the term "Defendants" in listing the elements
of an account stated claim, (see Complaint ¶¶ 33-37), AAAE's specific
allegations name Ambac and no other entity as the relevant actor (see id.
¶¶ 13-15).  The Court therefore dismisses the claim for account stated
against the Lessors.

worded.  <u>See</u> <u>id.</u>  Here, Ambac was incorporated in Wisconsin.
While the parties' briefs assume the application of New York
law, it may be that Wisconsin law should direct the Court's
alter ego analysis.

The Court need not go down that road at this point.
Because the Court has dismissed all claims brought against the
Lessors, the Court need not and does not make any
determination as to whether AAAE has sufficiently alleged that
Ambac is an alter ego of the Lessors, be it under New York or
Wisconsin law.  Even if Ambac is the Lessors' alter ego, the
Court has already determined that the claims against the
Lessors should be dismissed; treating Ambac and the Lessors
"as one entity," <u>Wm. Passalacqua Builders</u>, 933 F.2d at 142-43,
these claims must therefore also be dismissed as to Ambac.

F.   <u>LEAVE TO REPLEAD</u>

Under Rule 15(a) of the Federal Rules of Civil Procedure,
leave to amend a complaint "shall be freely given when justice
so requires."  "It is the usual practice upon granting a
motion to dismiss to allow leave to replead," although the
discretion to do so rests with the Court.  <u>Cortec Indus., Inc.</u>
<u>v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).  The
Court therefore grants AAAE leave to replead the claims
contained in the Complaint within twenty (20) days of the date

of the accompanying Order, in accordance with the discussion in this Decision.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 13) of defendants SP Aircraft Owner I, LLC, SP Aircraft Owner II, LLC, SP Aircraft Owner III, LLC, and Ambac Assurance Corporation to dismiss the complaint is GRANTED; and it is further

**ORDERED** that plaintiff Air Atlanta Aero Engineering Limited shall have leave to file, within twenty (20) days of the date of this Order, an amended complaint repleading the claims contained in the Complaint in accordance with the discussion in the accompanying Decision.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED.**

Dated:    New York, New York
          23 July 2009

                                         VICTOR MARRERO
                                           U.S.D.J.

-36-